UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLADYS MARTINEZ,<br><br>　　　　　　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, PAMELA JO BONDI, Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>　　　　　　　Respondents. | Case No.: 25-cv-2740-BJC-BJW<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 8 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Gladys Martinez's ("Petitioner") Motion for Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1. Petitioner also filed a Motion for Temporary Restraining ("TRO"). ECF No. 3. Respondents filed a response that simultaneously addressed the petition and the TRO, ECF No. 9, and Petitioner filed a traverse. ECF No. 10. The Court held a hearing on October

1

30, 2025. For the reasons set forth below, the Petition, ECF No. 1, is **GRANTED IN PART AND DENIED IN PART**.

## I.     BACKGROUND

A.     **Factual Background**

Petitioner is a 64-year-old transgender woman from Cuba who suffers from Parkinson's disease. ECF No. 1 at 2. She left Cuba for the United States in 1980 and became a lawful permanent resident in 1994. *Id.* In 2005, Petitioner was convicted of assault with a deadly weapon. *Id.* On January 24, 2011, an immigration judge ordered her removed to Cuba. *Id.* Because Cuba would not issue travel documents for Petitioner, she was released under an Order of Supervision and asserts that she has complied with all required annual immigration check-ins for the past 14 years. *Id.* Her last annual check-in was in May 2025. *Id.*

On September 19, 2025, Petitioner appeared at an ICE office to request renewal of her work permit. *Id.* at 5. During this visit, officers with Immigration and Customs Enforcement ("ICE") re-detained her, which caused her to be admitted into Paradise Valley Hospital. *Id.* On September 25, 2025, upon her release from the hospital, ICE presented Petitioner with a Form I-200, Warrant for Arrest of Alien. ECF No. 9 at 2. In the presence of ICE officers, Petitioner signed a Form I-205, Warrant of Removal/Deportation, *id.*, and was served with a Form I-294, Warning to Alien Ordered Removed or Deported. *Id.* On October 16, 2025, ICE provided Petitioner with written notice of the revocation of her Order of Supervision. *Id.* On October 20, 2025, ICE conducted an "informal interview" with Petitioner concerning the revocation. *Id.*

On October 17, 2025, ERO asked the government of Mexico whether it would accept Petitioner, but Mexico declined. ECF No. 9-1 at 3. On October 21, 2025, ICE submitted a similar request for Petitioner to be removed to Cuba, along with a request for an expedited determination, but these requests remain pending. *Id.* ICE has stated that if it cannot obtain approval to remove Petitioner to Cuba, ICE will try to effectuate Petitioner's removal to a

1  third country. *Id.*

2  During her detention, Petitioner has been housed at the Otay Detention Center within
3  the general male population. ECF No. 1 at 5. She alleges that she suffers from significant
4  medical conditions, including severe mobility limitations, upper body tremors, swelling of
5  the feet and ankles, and chronic back pain. *Id.* Although she was able to walk prior to her
6  re-detention, she now relies on a wheelchair for mobility and has been transported to the
7  hospital multiple times since being taken into ICE custody. *Id.*

8  On October 15, 2025, Petitioner filed a Petition for Writ of Habeas Corpus. ECF
9  No. 1. She also filed a Motion for Temporary Restraining Order ("TRO"). ECF No. 3.
10 Respondents filed a response on October 23, 2025, ECF No. 9, and Petitioner filed a
11 traverse on October 28, 2025. ECF No. 10. The Court held a hearing on October 30, 2025.
12 Following the hearing, the Court issued a minute order, ECF No. 12, granting Petitioner's
13 Writ of Habeas Corpus and ordering her release from the Otay Mesa Detention Center.
14 This formal written order follows.

## II.  LEGAL STANDARD

16 A writ of habeas corpus is "available to every individual detained within the United
17 States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl.
18 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of
19 that custody, and . . . the traditional function of the writ is to secure release from illegal
20 custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Under 28 U.S.C. § 2241, a
21 district court has the authority to grant a writ of habeas corpus when the petitioner "is in
22 custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.
23 § 2241(c)(3). The Petitioner bears the burden of demonstrating that "[h]e is in custody in
24 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §
25 2241(c)(3).

## III.  DISCUSSION

27 The Due Process clause prohibits deprivations of life, liberty, and property without
28 due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens

present in the United States, including those subject to final removal orders. *Zadvydas v. Davis*, 533 U.S. 678, 693–94 (2001); *see Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). The fundamental requirements of procedural due process are that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Petitioner challenges her detention as unlawful based on the following grounds: (1) Respondents failed to comply with 8 C.F.R. § 241.13 prior to re-detaining her and revoking her release under the Order of Supervision; (2) such non-compliance violated her due process rights; and (3) her continued detention violates the Immigration & Nationality Act ("INA"), 8 U.S.C. §§ 1231(a)(1)–(3), and the Fifth Amendment Due Process Clause because she has accrued more than six months of post-removal detention, and the Government has failed to rebut her prior showing that her removal is not reasonably foreseeable. ECF No. 1 at 3-4.

Respondents argue that ICE complied with the requirements of 8 C.F.R. § 241.13 when revoking Petitioner's Order of Supervision. *See* ECF No 9 at 5. Respondents further contends that Petitioner's detention is lawful under *Zadvydas* because ICE is actively pursuing Petitioner's removal and has provided the requisite procedural safeguards. *See id.* at 4. In response to Petitioner's procedural challenge, Respondents invokes the *Accardi* doctrine, arguing that Petitioner must demonstrate both that the agency failed to follow its own regulations, and the failure resulted in actual harm or prejudice. *Id.* Respondent maintains that, even if ICE did not perfectly adhere to every procedural step when revoking Petitioner's Order of Supervision, Petitioner has not demonstrated that the outcome would have been different or that she suffered any prejudice as a result. *Id.*

//
//
//

### A. Procedural Safeguards Governing Revocation of Order of Supervision

The Government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations also govern the revocation of such noncitizens' release. Both 8 C.F.R. § 241.4(l)(1) and § 241.13(i)(3) provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." Here, Petitioner contends that ICE failed to follow its own regulations by not providing her with adequate notice or a timely interview, and her removal is not reasonably foreseeable. The Court agrees.

    *i.* *Notice*

Subsection 241.13(i)(3) provides that a noncitizen "will be notified of the reasons for revocation of his or her release." In this case, Petitioner was arrested on September 19, 2025, but she did not receive formal notice of the reasons for revocation until October 16, 2025—nearly four weeks later. ECF No. 9 at 2. Petitioner argues that such delayed notice fails to satisfy the regulatory requirements. ECF No. 1 at 12. During oral arguments, Counsel for Respondents argued otherwise, maintaining that the notice was timely because the regulation requires notice "upon" revocation, not "prior to" revocation, and further asserting that the regulation does not explicitly require written notice.

The Court disagrees. The plain language and structure of the regulation demonstrate that notice must be both written and contemporaneous with, if not prior to, the act of revocation. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) ("[W]here the statutory language provides a clear answer, it ends there as well."). Section 241.13(i)(3) expressly provides that the noncitizen must be given "an opportunity to respond to the reasons for revocation stated in the notification." This provision presumes written notice identifying the specific grounds for revocation. *See Tran v. Noem*, No. 3:25-cv-02391-

BTM-BLM, 2025 WL 3005347 (S.D. Cal. Oct. 27, 2025) ("The Court holds that the notice must be in writing and contain all the reasons for the revocation of the alien's release."). Otherwise, the opportunity to respond would be meaningless. Oral or belated notice fails to satisfy the regulation's procedural safeguards and deprives the noncitizen of a meaningful chance to contest the decision to revoke supervised release.

Moreover, due process reinforces the necessity of timely, written notice. When an individual's liberty is at stake, as it is in the context of immigration detention, notice must be sufficient to inform the person of the reasons for deprivation and allow an adequate opportunity to respond. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) ("This [Due Process] right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."). The nearly four-week delay in providing written notice here falls well short of these constitutional and regulatory requirements. Accordingly, the Court holds that notice under § 241.13(i)(3) must be provided in writing,at or before the time of revocation. In this case, Petitioner was not afforded these due process requirements.

     *ii.* <u>Interview</u>

Second, the regulation requires that an informal interview be conducted "promptly after [the noncitizen's] return to Service custody." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). This requirement ensures that noncitizens have an immediate opportunity to respond to the stated reasons for revocation and to present evidence that removal is not significantly likely in the reasonably foreseeable future. As noted above, Petitioner was re-detained on September 19, 2025, yet ICE did not conduct the informal interview until October 20, 2025—thirty-two days later. ECF No. 9 at 2. Such a delay cannot reasonably be construed as "prompt" within the meaning of the regulation. *See Constantinovici v. Bondi*, No. 3:25-CV-02405-RBM-AHG, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025) (holding that a six-week delay in conducting an interview following arrest was not "prompt" under the regulation). Again, Respondents denied Petitioner due process as required by law.

### iii. *Failure to Demonstrate Likely Removal*

Subsection 241.13(i)(2) requires ICE to determine that the detainee is likely to be removed in the reasonably foreseeable future "on account of changed circumstances." Again, Petitioner was re-detained on September 19, 2025. ECF No. 1 at 5. It was not until October 17, 2025, that ICE attempted Petitioner's removal to Mexico, which was unsuccessful. ECF No. 9-1 at 3. ICE did not make its first attempt to remove Petitioner to Cuba, her country of origin, until October 21, 2025. *Id.* Other than contacting Cuban authorities, there is no evidence that Cuba will accept her, and travel documents have yet to be obtained. *See id.* Indeed, travel documents to Cuba have not been issued in the 14 years since Petitioner was ordered deported in January 2011. Accordingly, there is no reasonable basis to conclude that removal is imminent or reasonably foreseeable.

### iv. *Accardi Doctrine*

Under the *Accardi* doctrine, a federal agency must follow its own binding regulations and procedures. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). "Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). The doctrine applies broadly to an agency's procedures, regardless of how they are labeled. *See Church of Scientology of Cal. v. United States*, 920 F.2d 1481, 1487 (9th Cir. 1990); *Romeiro de Silva v. Smith*, 773 F.2d 1021, 1025 (9th Cir. 1985).

Respondents contend that even if ICE failed to follow its regulations, Petitioner cannot prevail under the *Accardi* doctrine because she has not shown prejudice resulting from that failure. *See Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 780 F. Supp. 3d 897, 921 (N.D. Cal. 2025) ("To establish a claim under the *Accardi* doctrine, plaintiffs must show both that (a) the government violated its own regulations, and (2) that plaintiffs suffer substantial prejudice as result of that violation."). Respondents further maintain that Petitioner lacks any protected liberty interest in

remaining free from detention once a valid removal order has been issued, and ICE is exercising its discretion under 8 C.F.R. § 241.4. ECF No. 9 at 5. Respondents assert that the regulations governing revocation of an order of supervision provide minimal procedural rights and leave revocation decisions to the agency's broad discretion, thereby precluding a due process claim. *Id.*

Petitioner argues that the regulations ICE violated, 8 C.F.R. §§ 241.4(l) and 241.13(i), embody fundamental due process protections --specifically, the right to notice and an opportunity to be heard before being subjected to indefinite detention. ECF No. 10 at 13. Because these provisions safeguard core constitutional rights, their violation inherently implicates due process concerns and is actionable even without a showing of prejudice. *Id.* In any event, Petitioner maintains that prejudice exists here because ICE failed to provide any opportunity to contest her re-detention, depriving her of the chance to show that continued release was appropriate. *Id.* at 13–14. She emphasizes that these regulations were expressly designed to safeguard constitutional rights, and that ICE's complete disregard for them constitutes both an *Accardi* violation and a denial of due process warranting her release. *Id.*

The Court finds the Respondents' argument unpersuasive. First, Respondents' argument that Petitioner must show substantial prejudice is not binding. While some courts have required a showing of prejudice to sustain an *Accardi* claim, *see Cmty. Legal Servs.*, 780 F. Supp. 3d at 921., that requirement is not mandated by the Ninth Circuit when the violated regulation safeguards fundamental due process rights. *See Phan v. Noem*, No. 3:25-CV-02422-RBM-MSB, 2025 WL 2898977 (S.D. Cal. Oct. 10, 2025) (holding that "ICE's failure to comply with both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 violated Petitioner's due process rights."). Regulations such as 8 C.F.R. §§ 241.4(l) and 241.13(i), which provide notice and an opportunity to be heard before indefinite detention, plainly fall within this category. These procedural guarantees serve as the minimal process due before depriving a person of liberty. Accordingly, Petitioner's claims are actionable under the *Accardi* doctrine regardless of whether she demonstrates prejudice.

**B.     Lawfulness of Petitioner's Continued Detention Under 8 U.S.C. § 1231**

Section 1231 governs the arrest and detention of noncitizens subject to a final removal order. *See* 8 U.S.C. § 1231. It directs the Attorney General to effectuate removal "within a period of 90 days," known as the "removal period," during which detention is authorized. § 1231(a)(1)–(2). In *Zadvydas*, the Supreme Court clarified that detention beyond the removal period is presumptively lawful for up to six months; after that, a noncitizen may make a prima facie case for relief by sharing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," at which point the burden shifts to "the Government [to] respond with evidence sufficient to rebut that showing." 533 U.S. at 701.

Petitioner asserts that she was ordered removed in January 2011, and the six-month *Zadvydas* period expired in July 2011. ECF No 1 at 14. Petitioner also argues that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 15. ICE's failed effort to remove her to Mexico, and its recent efforts to remove her to Cuba, do not satisfy the statutory standard. *Id.* at 16. Petitioner asserts that the burden therefore shifted to the Government to prove that there is a likelihood of removal in the reasonably foreseeable future, and the Government has failed to meet its. *Id.* at 17.

Respondents argues that removal efforts are ongoing, and detention remains lawful under *Zadvydas*. ECF No. 9 at 4-5. Respondents requested Mexico to accept Petitioner on October 17, 2025, which was declined, and subsequently requested removal to Cuba on October 21, 2025. ECF No. 9-1 at 3. Respondents contend that detention is not indefinite, but reasonably related to effectuating removal, and continued detention is justified because ICE is actively pursuing removal. ECF No. 9 at 4-5.

The Court finds that Petitioner has satisfied her burden under *Zadvydas*. Petitioner was ordered removed in January 2011, ECF No. 1 at 4, and the six-month presumptive detention period expired long ago. Petitioner has presented evidence that removal to Cuba is uncertain. No travel documents have been obtained at this time. *See* ECF No. 9-1. While Respondent contends that detention remains lawful because it is reasonably related

to effectuating removal, the Court finds that mere good-faith efforts is insufficient under *Zadvydas*. *See Nadarajah v. Gonzales*, 443 F.3d 1069, 1081–82 (9th Cir. 2006) (holding that the government lacked authority to detain an individual indefinitely under § 1231 where removal was not reasonably foreseeable despite ongoing diplomatic efforts). Continued detention must be justified by a significant likelihood of removal within a reasonably foreseeable period, and Respondents have failed to meet that standard.

### C. Conclusion

For the reasons set forth above, the Court concludes that Petitioner's continued detention is unlawful. Respondents failed to comply with the procedural safeguards set forth in 8 C.F.R. §§ 241.4 and 241.13, including the requirements for timely, written notice and a prompt interview following revocation of release. These failures constitute violations of both binding agency regulations and the fundamental due process rights guaranteed by the Fifth Amendment.

Moreover, Respondents have not demonstrated that Petitioner's removal is significantly likely in the reasonably foreseeable future, as required under *Zadvydas*, 533 U.S. at 701. Petitioner has therefore met her burden of showing that her continued detention is no longer authorized by statute and is constitutionally impermissible.

//
//
//
//
//
//
//
//
//
//
//
//

## IV. ORDERS

Upon consideration of the petition for writ of habeas corpus, ECF No. 1, and the accompanying prayer for relief, ECF No. 11, and for good cause shown, it is hereby **ORDERED** that:

1. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. 1231 until they have obtained valid travel documents necessary for Petitioner's removal.
2. Respondents are further **ENJOINED** from re-detaining Petitioner unless and until they follow the procedural safeguards set forth in 8 C.F.R. §§ 241.4; 241.13.
3. Respondents are also **ENJOINED** from removing Petitioner to any country other than Cuba, without first following the consecutive procedures of 8 U.S.C. § 1231(b)(2).
4. Petitioner's request for additional injunctive relief set forth in paragraph 5 of the Prayer for Relief, ECF No. 11, is **DENIED**.
5. Petitioner's Motion for TRO, ECF No. 3, is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: November 12, 2025

_____
Honorable Benjamin J. Cheeks
United States District Judge